[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 02, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14664
Non-Argument Calendar

_____

D. C. Docket No. 05-00063-CR-KOB-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYAN WILLIAM HOOBLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 2, 2007)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Bryan William Hoobler appeals his conviction, following his guilty plea, to

one count of conspiracy to manufacture 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and one count of manufacturing 5 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). We affirm.

## I. BACKGROUND

On March 27, 2002, local law enforcement officers in Walker County, Alabama, were serving an unrelated arrest warrant, when they discovered Hoobler and three other individuals engaged in methamphetamine production. They were using a method of methamphetamine production known as the anhydrous ammonia method, which routinely yields fifty grams or more of methamphetamine for each production or cooking. Hoobler assisted in providing the anhydrous ammonia.

After an indictment issued charging the four defendants with conspiracy to manufacture, distribute, and possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), Hoobler's counsel filed a motion for a psychiatric examination. Because Hoobler had suffered a severe accident that required a metal plate to be inserted in the back of his neck and skull, which had left him allegedly disabled, his counsel asked the court for a psychiatric evaluation to determine whether Hoobler had sufficient mental competence to understand the charges and proceedings against him and

2

whether he was able to aid in his defense. The magistrate judge granted Hoobler's motion and ordered that he be evaluated to determine whether he was competent to stand trial and the extent to which his mental illness may have affected his behavior at the time of the offense.

Hoobler was referred to the Federal Medical Center ("FMC") in Lexington, Kentucky, where he was evaluated from May 27, 2005, until July 26, 2005. Although Hoobler had suffered from a history of depression, suicidal tendencies, and substance abuse, the evaluating psychologists found him to be alert, attentive, and cooperative. During his stay, Hoobler displayed no behavior management problems and had no problems understanding or following directions from the correctional staff. He participated in a number of psychological tests. A test of his cognitive functioning indicated that he had a full-scale intelligence quotient of 78, indicating borderline or low average intellectual ability. Hoobler showed no deficiencies in memory relative that to his overall intellectual functioning. He did not exhibit symptoms of a severe or persistent mental illness; his thought process was coherent, well-organized, and goal-directed; and he did not evidence severe cognitive impairment in interactions with the examiner or others during the course of his evaluation at FMC.

Regarding the charges against him, Hoobler was able to explain the crimes

with which he had been charged, recount meetings with his counsel, and explain the roles of his counsel, the prosecuting attorney, judge, and jury. The evaluators found that he described the acts constituting his alleged offense in a rational and reality-based manner and that he indicated that he would be able to provide this same information to his attorney. Hoobler was aware that he faced an imprisonment sentence of ten years if convicted. He expressed no indication of confusion, disorientation, or perceptual distortion concerning his legal situation. The evaluating psychologists concluded that Hoobler was not suffering from a mental disease or defect that would render him mentally incompetent to understand the nature and consequences of the proceedings against him or to assist in his defense. Accordingly, Hoobler was determined to be competent to stand trial by the FMC evaluators.

A magistrate judge conducted a hearing on Hoobler's competency to stand trial and accepted into evidence the FMC psychological evaluation. Hoobler testified that he did not recall an instance in which he had called his attorney, asked a question, and was given an answer. He also did not remember anything about being arrested at a meth lab. During cross-examination, however, Hoobler admitted that he knew that the purpose of the hearing was for the judge to determine whether he was competent to stand trial.

4

The magistrate judge issued a report and recommendation, wherein he noted that Hoobler's psychological evaluators had reported him to be "alert, attentive, and cooperative," with "no problems understanding directions." R1-72 at 2. The magistrate judge found that the report confirmed that Hoobler had trouble remembering specific dates and details, but that he had "a factual and rational understanding of the charges and proceedings against him, and [wa]s able to recall events relevant to the proceedings." Id. at 3. The magistrate judge explained that Hoobler's "combination of his memory deficits, his drug dependence, and his depression and anxiety ma[d]e for a very difficult set of defense circumstances, [but] they d[id] not rise to the level of incompetence to stand trial." Id. at 5. He concluded that Hoobler "evidenced a rational understanding of the proceedings against him and c[ould] consult with his lawyer regarding certain events relevant to the charge." Id. at 5. Accordingly, the magistrate judge recommended that Hoobler be found competent to stand trial.

Hoobler's counsel appealed the magistrate judge's competency determination to the district judge and moved for an independent psychiatric evaluation. He alleged that Hoobler probably sustained brain damage from his accident and requested that, in the interest of justice, the court approve expenses for Hoobler to obtain an independent psychiatric evaluation. Hoobler's counsel

5

recommended Dr. Gagan Dhaliwal, with whom the counsel had prior experience, and asked the judge to approve payment for Dr. Dhaliwal's evaluation.

The district judge denied Hoobler's motion for an independent psychiatric evaluation and overruled his appeal of the magistrate judge's report and recommendation. After conducting an independent review of the record, the district judge adopted the magistrate judge's competency finding and ruled that Hoobler was competent to stand trial. The district judge denied Hoobler's motion for a second court-provided psychiatric evaluation and ruled that the FMC report "reflect[ed] a thorough investigation" and that Hoobler should have requested a defense expert before the competency hearing if he had desired one. R1-85 at 2. The judge explained that "[t]o grant the motion now would require further delays in the case for yet another examination, an opportunity for the Government to rebut any report, and a new competency hearing." Id.

Hoobler filed a notice of interlocutory appeal and argued that the district judge's order adopting the magistrate judge's competency finding and denying his motion for an independent evaluation was a final judgment that had to be appealed prior to trial. We held that the district judge's order finding Hoobler competent to stand trial was not final and appealable and dismissed Hoobler's appeal.

Hoobler's counsel then moved for a new hearing regarding his competency,

6

because, since the prior hearing, Hoobler had been evaluated by Dr. Dhaliwal, the forensic psychiatrist who had been requested previously at court expense; a copy of his report was attached to the motion. Dr. Dhaliwal reported that he had evaluated Hoobler on January 31, 2006, for one hour and forty-five minutes, and that it was his opinion that Hoobler did not have the ability to assist his counsel and, consequently, he was not able to proceed with his trial. Dr. Dhaliwal found Hoobler alert but uncertain of the charges against him, and he stated that his mother handled the legal issues, apparently with his counsel. Dr. Dhaliwal reported that Hoobler stated that he did nothing wrong, that he did not know the consequences of the legal charges against him, and that he did not know what plea he had entered. Nonetheless, he knew the name of his defense attorney. Dr. Dhaliwal concluded that Hoobler did not have the ability to assist his counsel and, therefore, he was unable to proceed with his trial.

The magistrate judge provided a second report and recommendation and determined that Dr. Dhaliwal's letter did not raise sufficient new evidence about Hoobler's condition to merit another competency hearing because it did not indicate that Hoobler "suffer[ed] from any mental illness that prevent[ed] [him] from understanding the nature of the proceedings against him and from assisting his lawyer within the limits of his memory loss." R1-104 at 6. The magistrate

7

judge concluded that "memory loss alone (or, at least as portrayed in this defendant) is not enough to cause [him] to be deemed incompetent to stand trial," id., and that "[i]nability to remember the events underlying a criminal charge simply does not equate to incompetence to stand trial," id. at 7. Therefore, the magistrate judge recommended denying Hoobler's motion for a second competency hearing.

Hoobler's counsel objected to the magistrate judge's second report and recommendation. He argued that the magistrate judge misinterpreted Dr. Dhaliwal's letter and that the doctor had found that a mental illness prohibited Hoobler from understanding the nature of the proceedings against him and assisting his lawyer in his defense. He further argued that the FMC report did not include the qualifications of the examiners, and he provided the qualifications of Dr. Dhaliwal.

The district judge accepted the magistrate judge's second report and recommendation and denied Hoobler's motion for another competency hearing. The district judge found that the FMC report was prepared by Dr. Campbell, who had a Ph.D. in forensic psychology, and that Dr. Dhaliwal was an M.D. without any listed experience in clinical practice since 2000. The district judge noted that Dr. Dhaliwal "expressed legal, not factual conclusions, and the facts contained in

8

his report did not support his legal conclusion." R1-106 at 1-2. The district judge reiterated the magistrate judge's finding that memory loss alone could not be equated with incompetency and determined that "the factual statements in Dr. Dhaliwal's report d[id] not support a finding of incompetency to stand trial." Id. at 2. The district judge ruled that Hoobler had failed to offer new evidence of mental illness that would prevent him from understanding the nature of the proceedings against him and noted that Dr. Dhaliwal's report would not have changed the ruling if it had been offered before the initial competency hearing.

Thereafter, Hoobler entered into a plea agreement with the government, whereby he agreed to plead guilty to both counts for which he was charged in the superceding indictment. The plea agreement contained a provision, highlighted in bold print, in which Hoobler agreed to "waive[ ] his right to appeal his conviction and sentence, on both direct and collateral appeal, so long as that sentence is within the advisory guideline range, as that range is determined by the Court." R1-106 at 5. Another provision stated that Hoobler was aware of the charges, the elements of each count, and had discussed the charges and possible defenses with his counsel. Hoobler verified that he was pleading guilty because he was guilty. The plea agreement contained another bold-type provision in which Hoobler waived his right to appeal his conviction and his sentence by direct or collateral appeal,

subject to an exception for "[a]ny punishment that constitutes an upward departure from the advisory guideline sentencing range, as that range is determined by the court at the time sentence is imposed." Id. at 8-9.

At his change-of-plea proceeding, Hoobler stated that he took medication, but that it did not affect his ability to understand and respond to the judge's questions. The district judge asked Hoobler to interrupt the proceedings if at any point he did not understand what was occurring and told him that, if he did not interrupt, then the judge would presume that he comprehended the hearing. Hoobler informed the judge that he understood the terms of his plea agreement when he signed it. His counsel told the judge that he and Hoobler had sufficiently discussed the plea agreement and that his counsel was able to answer satisfactorily all of Hoobler's questions. Hoobler verified that he had a sufficient opportunity to discuss the agreement with his counsel and that his counsel had answered all of his questions to his satisfaction. He responded that he understood specific provisions in the plea agreement, including the appeal waiver; the government's discretion to file for a downward departure based on substantial assistance; the advisory nature of the Sentencing Guidelines; his sentence could be based on the agreed facts; the agreement was not binding upon the court; and he would be unable to revoke his plea if the judge sentenced him to a term of imprisonment beyond that

10

recommended by the government. Hoobler stated that he had not been promised anything or threatened to procure his guilty plea and that, if he pled guilty, then the only remaining proceeding was his sentencing.

The district judge explained the maximum penalties associated with the charges. Hoobler confirmed that his counsel clearly had explained the maximum penalties and that he understood them; the mandatory minimum sentences that he faced; his sentence would be determined with reference to the advisory Sentencing Guidelines; and his actual sentence could differ from the Sentencing Guidelines range. Hoobler informed the judge that he understood that he could enter a plea of not guilty, whereby the government would have to prove his guilt to a jury beyond a reasonable doubt, and that he would have the rights to the assistance of counsel, to confront witnesses, and to not bear witness against himself. He further stated that he understood he would be relinquishing those rights if he pled guilty. Hoobler stated that nothing prevented him at that time from understanding what the judge was saying to him, discussions with his counsel, the nature of the charges that he faced, or the purpose of the change-of-plea proceeding. Not only did Hoobler state that he understood the charges and the elements that the government was required to prove, but also he testified that he had discussed the charges with his counsel and that he was satisfied with his counsel's representation. Hoobler's

11

counsel stated that he felt Hoobler understood the charges against him and that he was knowingly and voluntarily entering his guilty plea.

The government read a statement of the facts that it would prove if the case went to trial, and Hoobler acknowledged that the statement was substantially correct. Hoobler admitted that he participated in the manufacture of methamphetamine and that he desired to plead guilty to the charges. The district judge reminded Hoobler that he was not required to plead guilty and that this would be his last chance to change his plea. Hoobler stated that he did not wish to reconsider his plea and that he still desired to plead guilty. Hoobler pled guilty to both charges in the superceding indictment. The judge found that Hoobler's plea was given competently, freely, voluntarily, and knowingly and was supported by the requisite factual basis.

The probation officer prepared Hoobler's presentence investigation report ("PSI"), which showed a Sentencing Guidelines range of 168 to 210 months of imprisonment. The government filed a motion for consideration of Hoobler's substantial assistance and recommended a downward departure from the Guidelines range for Hoobler's assistance in providing information concerning his drug trafficking activities and those of his codefendants. The government recognized that Hoobler's willingness to testify against his codefendants likely

12

caused one of his codefendants to plead guilty. Hoobler also supplied the government with information that corroborated the identities of others involved in the methamphetamine trade in and around Walker County.

The district judge sentenced Hoobler to 96 months of imprisonment. Hoobler filed a notice of appeal in which he argues that the district judge erred by finding him competent and accepting his plea. The government filed a motion to dismiss the appeal, in which it argued that the appeal-waiver provision of Hoobler's plea agreement prohibited him from raising any issues on appeal. We ordered that the government's motion be carried with the case.

## II. DISCUSSION

A. Government's Motion

The government seeks to enforce the plea-agreement provision whereby Hoobler agreed to waive his right to appeal his conviction and sentence. Hoobler does not attack his sentence; instead, his only issue on appeal is whether he was competent to plead guilty. Generally, a defendant who pleads guilty is precluded from challenging his conviction on appeal, except on the ground that the plea was involuntary. United States v. Kaiser, 893 F.2d 1300, 1302 (11th Cir. 1990). Like a guilty plea, an appeal-waiver provision must be made knowingly and voluntarily to be effective. United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993).

13

Because a defendant can always appeal his decision to plead guilty on the ground that he did so involuntarily, he also can appeal whether he was competent to enter into a plea agreement whereby he relinquished his right to appeal his conviction. See Godinez v. Moran, 509 U.S. 389, 400 n.11, 113 S.Ct. 2680, 2687 n.11 (1993) (noting "that the prohibition against the trial of incompetent defendants dates back at least to the time of Blackstone"). Therefore, the government's motion to dismiss the appeal is denied, and we proceed to the merits of Hoobler's appeal.

B. Competency to Enter into the Plea Agreement

On appeal, Hoobler argues that a finding of competency is essential before a criminal defendant may enter into a plea agreement or change his plea to guilty. He notes that the prosecution and defense experts held differing opinions with regard to Hoobler's competency at the time of his crimes and during court proceedings. Hoobler contends that, because he was unable to aid in his defense, the district court violated his Due Process rights by allowing him to plead guilty.

We review a district judge's decision on a defendant's competency to stand trial for clear error. United States v. Izquierdo, 448 F.3d 1269, 1276 (11th Cir. 2006) (per curiam) (citing United States v. Hogan, 986 F.2d 1364, 1371 (11th Cir. 1993)). A district judge makes a clearly erroneous finding of fact when that finding leaves us "'with a definite and firm conviction that a mistake has been

14

committed.'" Hogan, 986 F.2d at 1372 (citation omitted).  A judge cannot clearly

err when deciding between two permissible views of the evidence.  Izquierdo, 448

F.3d at 1278.  "The standard for competency to stand trial is whether the defendant

'has sufficient present ability to consult with his lawyer with a reasonable degree

of rational understanding–and whether he has a rational as well as factual

understanding of the proceedings against him.'"  Hogan, 986 F.2d at 1371 (quoting

Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789 (1960)).  This same

competency standard applies to a defendant who wishes to plead guilty rather than

stand trial.[1]  Godinez, 509 U.S. at 396-99, 113 S.Ct. at 2685-86.

The record reveals that the district judge did not clearly err by finding that

Hoobler was competent to enter a plea of guilty.  To reach her conclusion, the

judge relied on the report authored by the FMC psychologists, who studied

Hoobler as an inpatient for two months.  The report found that, although Hoobler

had borderline intelligence and some deterioration of his memory, he understood

the nature of the charges that he faced and the potential consequences; could

provide his attorney with knowledge of the facts supporting the alleged offense;

---

[1] Hoobler argues that the question before the district judge was whether he was competent at the time of his crimes.  By pleading guilty, however, Hoobler waived all non-jurisdictional defenses, including his mental competence at the time of his commission of the crimes with which he was charged.  Speed v. United States, 441 F.2d 1106, 1107 (5th Cir. 1971) (per curiam).

and had an understanding of his impending legal proceedings. The report concluded that Hoobler was not then suffering from a mental disease or defect that rendered him mentally incompetent to understand the nature and consequences of the proceedings against him or to assist in his defense and that Hoobler was competent to stand trial. The district judge could rely on this assessment and discount the report supplied by Dr. Dhaliwal, a psychiatrist retained by Hoobler, who had examined him for less than two hours before arriving at a largely unsubstantiated finding that Hoobler was incompetent to proceed. Furthermore, the judge also could rely on observations of Hoobler at the competency hearing and at the change-of-plea-hearing, where he demonstrated his understanding of the legal proceedings and potential consequences of a conviction. Additionally, the judge's competency finding was buttressed by the government's motion at sentencing for the court to consider Hoobler's substantial assistance in providing truthful and reliable information about the drug trafficking activities of his codefendants and throughout Walker County, Alabama. Consequently, the district judge did not clearly err by finding Hoobler competent to enter a guilty plea.

Hoobler does not argue precisely that his guilty plea was offered without a knowing and voluntary waiver of his trial rights, but he does question whether his competency allowed him to understand the nature of his decision to plead guilty.

16

The Supreme Court has recognized a "two-part inquiry," which requires that a trial judge determine first whether a defendant is competent and then ensure that the defendant who wishes to plead guilty makes a knowing and voluntary waiver of his trial rights. Godinez, 509 U.S. at 401, 113 S.Ct. 2688. While the focus of the trial judge's competency inquiry is whether the defendant "has the ability to understand the proceedings," "[t]he purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision." Id. at 401 n.12, 113 S.Ct. 2687 n.12. Therefore, Hoobler's argument encompasses both his capacity to plead guilty and whether he waived his trial rights knowingly and voluntarily.

Because a guilty plea involves the waiver of a number of a defendant's constitutional rights, due process requires that a defendant make his plea knowingly and voluntarily. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam). Ordinarily, we will review de novo whether a guilty plea was entered knowingly and voluntarily. Allen v. Thomas, 161 F.3d 667, 670 (11th Cir. 1998). Nonetheless, where the defendant does not object to an alleged violation of Federal Rule of Criminal Procedure 11 before the trial judge, as Hoobler failed to do, we can review only the plea circumstances for plain error. Moriarty, 429 F.3d at 1018. Under a plain error standard of review, if a defendant

17

can establish that there is error, that is plain, and which affects his substantial rights, then we have the discretion to recognize that forfeited error, but only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 1019. When accepting a guilty plea, a judge must comply with the requirements of Rule 11 and must "specifically address three 'core principles,' ensuring that the defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id.

The district judge did not plainly err by accepting Hoobler's guilty plea as voluntary, knowing, and intelligent because Hoobler's plea colloquy met the three core objectives of Rule 11. Aware that Hoobler's competency previously had been raised as an issue, the judge proceeded cautiously through the change-of-plea proceeding to ensure that Hoobler understood the charges that he faced, the rights that he would waive by pleading guilty, and the sentencing consequences of his plea. Hoobler told the judge that no mental impairment affected his ability to understand the judge's questions as well as understand the advice of his counsel, and he stated that he had not been forced to plead guilty. Throughout the hearing, he answered that he understood the terms of the plea agreement that he had signed, the judge's explanations of the charges that he faced, the maximum punishments

for those crimes, how his sentence would be determined, and the rights that he would forego by pleading guilty. Hoobler's counsel acknowledged that Hoobler was pleading guilty knowingly and voluntarily. Hoobler agreed with the accuracy of the government's statement of the facts that it would prove if the case had gone to trial, admitted that he had manufactured methamphetamine, and pled guilty. Our review of Hoobler's change-of-plea proceeding shows that he competently, knowingly, and voluntarily entered his guilty plea.[2]

## III. CONCLUSION

Following his guilty plea to conspiracy to manufacture of 50 grams of methamphetamine and manufacturing 5 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, Hoobler appeals as error the district judge's finding him competent and accepting his guilty plea pursuant to a plea agreement with the government. As we have explained, Hoobler entered his guilty plea competently, knowingly, and voluntarily. Accordingly, the government's motion to dismiss his appeal is **DENIED**, and the district judge's final determination that Hoobler was competent to enter into a plea agreement with the

---

[2] Hoobler argues that the district judge erred by denying his request for another evaluation by an independent psychiatrist. We review the district judge's decision for abuse of discretion. United States v. Nickels, 324 F.3d 1250, 1251-52 (11th Cir. 2003) (per curiam). A credible two-month study already had found Hoobler competent; the judge held a competency hearing and made the same determination. Additionally, Hoobler had provided a contradictory report from an expert that he had hired, which the judge considered even after the hearing. Therefore, the district judge acted within her discretion to prevent further delays in this case.

government and to plead guilty is **AFFIRMED.**